IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**DAVIDA SANCHEZ**, *et al.*,

    Plaintiffs,

v.

**STATE OF WASHINGTON**, *et al.*,

    Defendants.

Case No. 3:17-cv-1669-SI

**OPINION AND ORDER**

**Michael H. Simon, District Judge.**

    Plaintiffs are a mother (Davida Sanchez), her two adult children, and her one minor child, bringing *pro se* claims against the State of Washington, several Washington state court judges and officials, several attorneys practicing in Washington, and a Washington family advocacy entity and its employees. In Plaintiffs' Amended Complaint, it appears that they are alleging three claims: (1) one claim under Title II of the Americans with Disabilities Act ("ADA"); (2) one claim under Title III of the ADA; and (3) one claim under the Rehabilitation Act.[1] Plaintiffs do not specifically identify what claims are brought against which defendants. Plaintiffs allege

---

[1] Plaintiffs also mention the Fourth and Fifth Amendments and other statutes in the Complaint, but it does not appear that Plaintiffs intend to bring causes of action relating to these statutes or constitutional provisions.

PAGE 1 – OPINION AND ORDER

both that they are "regarded as" being disabled and that they are actually disabled under the ADA. The crux of Plaintiffs' allegations is that Defendants discriminated against Plaintiffs and failed to accommodate Plaintiffs' disabilities and provide Plaintiffs with appropriate access to the courts and family law system while Ms. Sanchez adjudicated her marriage dissolution and child custody issues.

Before the Court are motions for judgment on the pleadings brought by Defendants Tierra A. Busby, Michael H. Evans, Mary Fairhurst, Stephen M. Warning ("Judicial Officer Defendants"), and State of Washington (ECF 94), Defendants Cowlitz Family Advocacy, Christina Day-Connelly, and Tanaja Gravina ("Cowlitz Defendants") (ECF 96), and Defendant Alex Styve (ECF 101).[2] The Court shall collectively refer to the moving defendants as "Defendants." For the following reasons, Defendants' motions are granted, and the Court also *sua sponte* dismisses all claims against the defendants who have not filed motions. *See, e.g., Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987) (noting that a court may *sua sponte* dismiss claims under Federal Rule of Civil Procedure 12(b)(6), even shortly before trial); *Silverton v. Dep't of Treasury*, 644 F.2d 1341, 1345 (9th Cir. 1981) (noting that a trial court "may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related").

## STANDARDS

### A. Judgment on the Pleadings under Rule 12(c) of the Federal Rules of Civil Procedure

"Analysis under Rule 12(c) is 'substantially identical' to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint,

---

[2] Defendants Timothy South, Amy Wade, and Jan Caliman, all proceeding *pro se*, have not filed any motions at this time.

taken as true, entitle the plaintiff to a legal remedy." *Pit River Tribe v. Bureau of Land Mgmt.*, 793 F.3d 1147, 1155 (9th Cir. 2015) (quoting *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012)). Dismissal for failure to state a claim under Rule 12(b)(6) "is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1988)). In addition, "to survive a motion to dismiss, a complaint must contain sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (noting that the *Iqbal* standard applies to review of Rule 12(c) motions).

**B. Personal Jurisdiction**

The plaintiff bears the burden of demonstrating that the court's exercise of jurisdiction is proper. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citing *Scher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). When the court's determination is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts." *Id.* (quotation marks and citation omitted). In resolving the motion on written materials, the court must "only inquire into whether the plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction." *Id*. (quotation marks omitted) (quoting *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995)). A plaintiff cannot solely rest on the bare allegations of its complaint, but uncontroverted allegations in the complaint must be taken as true. *Id*. Conflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor. *Id.* (citing *Am. Tel. & Tel. Co. v.*

*Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) and *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000)).

## C. Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction. *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quotation marks omitted). As such, a court is to presume "that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted); *see also Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A motion to dismiss for lack of "subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). An objection that a particular court lacks subject matter jurisdiction may be raised by any party, or by the court on its own initiative, at any time. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); Fed. R. Civ. P. 12(b)(1). The Court must dismiss any case over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3); *see also Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015) (noting that when a court lacks subject-matter jurisdiction, meaning it lacks the statutory or constitutional power to adjudicate a case, the court must dismiss the complaint, even *sua sponte* if necessary).

A motion to dismiss for lack of subject matter jurisdiction may be either "facial" or "factual." *See Safe Air for Everyone*, 373 F.3d at 1039. A facial attack on subject matter jurisdiction is based on the assertion that the allegations contained in the complaint are insufficient to invoke federal jurisdiction. *Id.* "A jurisdictional challenge is factual where 'the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction.'" *Pride v. Correa*, 719 F.3d 1130, 1133 n.6 (9th Cir. 2013) (quoting *Safe Air for Everyone*, 373 F.3d at 1039)). When a defendant factually challenges the plaintiff's assertion

PAGE 4 – OPINION AND ORDER

of jurisdiction, a court does not presume the truthfulness of the plaintiff's allegations and may consider evidence extrinsic to the complaint. *See Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012); *Robinson*, 586 F.3d at 685; *Safe Air for Everyone*, 373 F.3d at 1039. A factual challenge "can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency." *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996) (citation and quotation marks omitted).

### D. The *Rooker-Feldman* Doctrine

Pursuant to the *Rooker-Feldman*[3] doctrine, federal courts lack jurisdiction to hear cases that amount to collateral attacks on state court judgments. The basic premise of that doctrine is that "a federal district court does not have subject matter jurisdiction to hear a direct appeal from the final judgment of a state court." *Noel v. Hall*, 341 F3d 1148, 1154 (9th Cir. 2003). Instead, the United States Supreme Court is the only federal court with jurisdiction to hear appeals from state courts. *Id.*; *see* 28 U.S.C. § 1257.

The scope of the *Rooker-Feldman* doctrine includes *de facto* appeals from a state court decision and "any issue raised in the suit that is 'inextricably intertwined' with an issue resolved by the state court in its judicial decision." *Noel*, 341 F.3d at 1158. A claim is inextricably intertwined with a state court judgment if the federal claim can succeed only to the extent that the state court wrongly decided the issues before it, or if the relief requested in the federal action would effectively reverse the state court decision or void its ruling. *Doe & Assocs. Law Offices v. Napolitano*, 252 F.3d 1026, 1029-30 (9th Cir. 2001) (citations omitted).

*Rooker-Feldman* bars a suit from going forward if the following four factors are satisfied: (1) the plaintiff in the federal suit lost in the state court proceeding; (2) the state court

---

[3] The *Rooker-Feldman* doctrine takes its name from *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

determination is at the core of the federal lawsuit; (3) the federal lawsuit seeks review and rejection of the state court verdict; and (4) the state court judgment was entered before commencement of the federal action. *McKithen v. Brown*, 481 F.3d 89, 97 (2nd Cir. 2007). A dismissal under this doctrine generally is without prejudice, although one from which the plaintiff will not be able to replead in this Court. *See White v. Dobrescu*, 651 F. App'x 701, 703 (9th Cir. 2016) ("Because we affirm the dismissal on the basis of the *Rooker-Feldman* doctrine, we treat the dismissal as one without prejudice."); *see also Kelly v. Fleetwood Enters., Inc.*, 377 F.3d 1034, 1036 (9th Cir. 2004) (dismissals for lack of subject matter jurisdiction should be without prejudice).

## BACKGROUND

Plaintiffs allege that each of them has a mental health disability. Plaintiffs then allege that Defendants[4] improperly regarded Plaintiffs as mentally ill and suffering from parental alienation syndrome ("PAS"), bipolar disorder, and post-traumatic stress disorder ("PTSD"). Plaintiffs allege that Defendants "faked" the existence of these conditions, plus a spinal injury, to deem Ms. Sanchez unfit to care for her children.[5] Plaintiffs further allege that Defendants discriminated against Plaintiffs because of these perceived disabilities. Plaintiffs also allege that Defendants refused to provide Plaintiffs with appropriate accommodations necessary to ensure that Plaintiffs had full access to court proceedings to which Plaintiff Davida Sanchez was a party

---

[4] For most allegations in the Complaint, all defendants are referenced together as "Defendants," and thus it is difficult to determine what allegations are directed against which defendant.

[5] Plaintiffs also allege that Ms. Sanchez has PTSD and spinal damage and has received treatment. Thus, Plaintiffs' complaint is inconsistent in alleging both that Defendants improperly "regarded" Ms. Sanchez as having these conditions and "faked" these conditions to deny Ms. Sanchez custody, and that Ms. Sanchez actually did suffer from these conditions.

and at which the custody of Plaintiffs Tyler Larson (then a minor) and G.L. (Ms. Sanchez's children) were at issue.

From Plaintiffs' allegations, in 2015 she and her ex-husband dissolved their marriage through litigation that resulted in a property settlement agreement and parenting plan. These agreements provided Ms. Sanchez with spousal support, "residential custody," and visitation of GL. Plaintiffs allege that in reaching this litigated resolution, Defendants "stereotyped and stigmatized" Ms. Sanchez and "perpetuated the use of PTSD . . . to prejudice Ms. Sanchez and other women in the family courts." Plaintiffs also allege that their Fourth and Fifth Amendment rights were implicated when they were forced into mental health evaluations with providers not of their choice, and their mental health information was discussed in open court.

Plaintiffs allege that the Title II entities involved in this case did not perform appropriate self-evaluations. Plaintiffs further allege that if those entities had performed adequate self-evaluations, some of the harm in this case could have been mitigated.

Plaintiffs also allege that the State of Washington has a systemic practice of using PTSD, bipolar disorder, and other purported mental health accusations against women and children in family court and giving preferential treatment to fathers in divorce and custody proceedings. Plaintiffs allege that the courts were biased against Ms. Sanchez according to a "sex-based stereotype." Plaintiffs further allege that the policy of giving preferential treatment to fathers has a financial motivation. Plaintiff makes other general and conclusory allegations regarding PAS and bias in favor of fathers and against mothers and children. Plaintiff also asserts legal conclusions, including citing to statutes and regulations and concluding that Defendants violated them. The limited allegations specific to each defendant are discussed in Section D below, as needed.

## DISCUSSION

Defendants bring their motions on various grounds, and many join in the arguments made by one another. They argue that: (1) the Court lacks subject matter jurisdiction because Plaintiffs' claims are barred by *Younger* abstention; (2) the Court lacks subject matter jurisdiction because Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine; (3) the Judicial Officer Defendants have absolute immunity for all claims against them; (4) Plaintiffs fail to state a claim on which relief can be granted; (5) Ms. Sanchez's children lack standing; (6) the Court does not have personal jurisdiction over the Judicial Officer defendants; and (7) the Anti-Injunction Act bars certain claims. The Court finds that the *Rooker-Feldman* doctrine applies, Plaintiffs' claims against the Judicial Officer defendants are barred by absolute immunity, Plaintiffs' allegations fail to demonstrate personal jurisdiction over any Defendant, and Plaintiffs' allegations fail to state a claim. Accordingly, judgment on the pleadings is granted in favor of Defendants, this case is dismissed, and the Court does not reach any of Defendants' remaining arguments.

### A. The *Rooker-Feldman* Doctrine

Despite Plaintiffs' allegation that they are not challenging a state court opinion, under the *Rooker-Feldman* doctrine, a *de facto* challenge to state court decisions, or federal cases raising issues that are "inextricably intertwined" with an issue raised in state court, are prohibited. *Noel*, 3341 F.3d at 1158. The four factors to consider in applying the *Rooker-Feldman* doctrine are met in this case.

For the first and fourth factors, Plaintiff Davida Sanchez lost in the state court proceeding, and the state court judgment preceded this action. For the second factor, the state court's determination is at the core of this action—Plaintiffs' allegations against Defendants focus exclusively on conduct relating to Ms. Sanchez's custody and divorce state court litigation.

Finally, for the third factor, Plaintiffs' allegations make clear that the gravamen of their challenge is that the state court required Ms. Sanchez and her children to consult with court-appointed practitioners, established a custody and support agreement in a manner with which Plaintiffs disagree, and executed a final custody and divorce decree with which Plaintiffs do not concur. Thus, for Plaintiffs to prevail in this case, the Court necessarily would have to determine that the state court wrongly decided these issues. That is not the role of federal courts. To the extent Ms. Sanchez was displeased with the state court actions and decisions, she needed to appeal those decisions in state court. Accordingly, under the *Rooker-Feldman* doctrine, the Court does not have jurisdiction to consider Plaintiffs' claims. *See, e.g.*, *Skipp v. Brigham*, 2017 WL 4870907, at *5 (D. Conn. Oct. 26, 2017) (finding that the *Rooker-Feldman* doctrine applies to similar claims alleging ADA and Rehabilitation Act violations and discrimination by state court officials and other parties related to custody and divorce proceedings); *Wolf v. Escala*, 2015 WL 2403106, at*8-10 (D. N.J. May 20, 2015) (same).

**B. Judicial Immunity**

Judges are absolutely immune from liability for damages, certain injunctive relief,[6] and declaratory relief sought as a result of judicial acts performed in their judicial capacity. *Moore v. Brewster*, 96 F.3d 1240, 1243-44 (9th Cir. 1996) (superseded by statute on other grounds); *Mullis v. U.S. Bankr. Court for Dist. of Nev.*, 828 F.2d 1385, 1388 (9th Cir. 1987); *see also Craig v. Villicana*, 676 F. App'x 716 (9th Cir. 2017). To qualify for judicial immunity, a judge must have performed "judicial acts" within the scope of his or her jurisdiction. *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978). "An act is judicial in nature if it is a function normally performed by a judge and the parties to the act were dealing with the judge in his judicial

---

[6] The Court notes that "judicial immunity is not a bar to prospective injunctive relief." *Pulliam v. Allen*, 466 U.S. 522, 541-42 (1984).

capacity." *McGuire v. Clackamas Cty. Counsel*, 2009 WL 4456310, at *4 (D. Or. Nov. 24, 2009) (citing *Stump*, 435 U.S. at 362). Judges "enjoy absolute immunity even when their actions are erroneous, malicious, or in excess of judicial authority." *Tanner v. Heise*, 879 F.2d 572, 576 (9th Cir. 1989).

Absolute immunity also can extend "to nonjudicial officers for all claims relating to the exercise of judicial functions." *Burton v. Infinity Capital Mgmt.*, 862 F.3d 740, 747 (9th Cir. 2017) (quoting *Curry v. Castillo*, 297 F.3d 940, 947 (9th Cir. 2002)). A court should "take a functional approach to determining whether a nonjudicial officer is entitled to absolute quasi-judicial immunity by looking to 'the nature of the function performed and not to the identity of the actor performing it.'" *Id.* (quoting *Castillo*, 297 F.3d at 948)). "To qualify for absolute immunity, the function performed must be a judicial act with 'a sufficiently close nexus to the adjudicative process'" and must involve the exercise of discretionary judgment. *Id.* at 747-48 (quoting *Castillo*, 297 F.3d at 948)).

The only factual allegations Plaintiffs assert relating to the defendant judges involve specific judicial orders made within the scope of their jurisdiction. Thus the defendant judges are entitled to absolute judicial immunity. *See Bunnell v. Brown*, 2018 WL 3040893, at *6 (D. Or. June 19, 2018) (applying judicial immunity to similar claims); *Skipp*, 2017 WL 4870907, at *7 (same). Similarly, Court Commissioner Busby's involvement in this case arises from her duties relating to the exercise of judicial functions that had a sufficiently close nexus to the adjudicative process. Accordingly, she is entitled to quasi-judicial immunity.

**C. Personal Jurisdiction**

Unless a federal statute governs personal jurisdiction, a district court applies the law of the forum state. *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008) (citing *Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998)). Oregon's long-arm

PAGE 10 – OPINION AND ORDER

statute is co-extensive with constitutional standards. *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990) (citing Or. R. Civ. P. 4(L); *Oregon ex rel. Hydraulic Servocontrols Corp. v. Dale*, 657 P.2d 211, 212 (Or. 1982). Thus, this Court need only determine whether its exercise of personal jurisdiction over the various defendants would offend constitutional due process requirements. *See Boschetto*, 539 F.3d at 1015; *see also Hydraulic Servocontrols*, 657 P.2d at 212.

Due process requires that the defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted). The Supreme Court has rejected the application of "mechanical" tests to determine personal jurisdiction. *Id.* at 319; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985). Rather, a court should consider the "quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." *Int'l Shoe*, 326 U.S. at 319.

"There are two forms of personal jurisdiction that a forum state may exercise over a nonresident defendant—general jurisdiction and specific jurisdiction." *Boschetto*, 539 F.3d at 1016. A court has general personal jurisdiction over a defendant whose contacts with the forum are "continuous and systematic" even if those contacts are wholly unrelated to the plaintiff's claims. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984). If the court lacks general personal jurisdiction, it may have specific personal jurisdiction if the defendant has certain minimum contacts with the forum state, the controversy arose out of those contacts, and the exercise of jurisdiction is reasonable. *See Burger King*, 471 U.S. at 472-74.

The Ninth Circuit applies a three-part test to determine if the exercise of specific jurisdiction over a nonresident defendant is appropriate:

> (1)    The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2)    the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3)    the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010) (quoting *Schwarzenegger*, 374 F.3d at 802). The plaintiff bears the burden as to the first two prongs, but if both are established, then "the defendant must come forward with a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Boschetto*, 539 F.3d at 1016 (quoting *Schwarzenegger*, 374 F.3d at 802).

The first prong embodies two distinct, although sometimes conflated, concepts: purposeful availment and purposeful direction. *See Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 672 (9th Cir. 2012); *Brayton Purcell*, 606 F.3d at 1128. "A purposeful availment analysis is most often used in suits sounding in contract. A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort." *Schwarzenegger*, 374 F.3d at 802 (internal citations omitted). The focus for personal jurisdiction is on the *defendant's* contacts with the forum, not the plaintiff's contacts with the forum, or merely whether the plaintiff was injured while living or working in the forum state. *See, e.g.*, *Walden v. Fiore*, 571 U.S. 277, 290 (2014) ("Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the

forum State. The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.").

Plaintiffs' allegations relating to every Defendant in this case involve no contacts with Oregon. All of the conduct and activities of each Defendant took place in Washington. This alleged conduct included: (1) Defendants allegedly discriminated against Plaintiffs in Washington; (2) Defendants allegedly forced Plaintiffs to undergo allegedly unfair court-appointed evaluations in Washington; (3) Defendants allegedly prevented Plaintiffs from receiving appropriate access to Washington courts; (4) Defendants allegedly disclosed Plaintiffs private information in open court in Washington and in court documents. There were no alleged activities by any Defendant that took place in Oregon or were directed at Oregon.

Plaintiffs' jurisdictional allegation alleges: "The acts and omissions of Defendants giving rise to this action occurred in Cowlitz County WA." Plaintiffs' only allegation involving Oregon states: "Plaintiffs have been situated and aggrieved in McMinnville OR during a substantial portion of the events giving rise to this action, including present unmitigated harm occurring in this district, making venue proper in this judicial district . . . ." As discussed by the Supreme Court in *Walden*, simply living in Oregon and alleging harm by Defendants is insufficient to allege personal jurisdiction. Accordingly, Plaintiffs fail to allege *conduct* by any Defendant that gives rise to personal jurisdiction in Oregon. Because of the other deficiencies in Plaintiffs' Complaint requiring its dismissal, the Court does not find it in the interest of justice to transfer this case to a venue in which personal jurisdiction would lie. *See* 28 U.S.C. § 1631 (directing a court to consider a transfer of venue when a court finds jurisdiction lacking, if a transfer "is in the interest of justice").

**D. Sufficiency of Plaintiffs' Allegations**

Although Plaintiffs' Complaint is lengthy, it fails to state *factual* allegations sufficient to a state claim against any Defendant. Plaintiffs' Complaint is replete with conclusory statements that the Court does not accept as true and legal conclusions that the Court disregards. The specific factual allegations relating to the alleged conduct of Defendants are quite minimal.[7]

Plaintiff brings claims under Titles II and III of the ADA, and the Rehabilitation Act. To prevail under Title II of the ADA, Plaintiff must show that: (1) she is a qualified individual with a disability; (2) she was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) this exclusion, denial, or discrimination was by reason of her disability. *Cohen v. City of Culver City*, 754 F.3d 690, 695 (9th Cir. 2014).

"To prevail on a discrimination claim under Title III, a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public

---

[7] Much of Plaintiffs' Complaint appears to be a copy of the complaints filed in the two cases Plaintiffs recite as "similarly situated to" and "in association with" their case. These cases were dismissed. *See, e.g.*, *Wolf v. Escala*, 2015 WL 2403106, at*7 (D. N.J. May 20, 2015) (dismissing claims with prejudice); *Skipp v. Brigham*, 2017 WL 4870907, at *7 (dismissing claims and noting that if the plaintiff files anything more with the court other than an appeal the plaintiff will be designated as a vexatious litigant). Moreover, other cases that have been filed using similar complaints have uniformly been dismissed when considered by the courts in which they were filed. *See, e.g.*, *Bunnell v. Brown*, 2018 WL 3040893, at *1 (D. Or. June 19, 2018) (dismissing claims without leave to amend); *Mitchell v. Alabama*, 2018 WL 2107218, at *3 (M.D. Ala. Apr. 10, 2018), *report and recommendation adopted*, 2018 WL 2107219 (M.D. Ala. May 7, 2018) (dismissing claims *sua sponte*); *Boyer v. Becerra*, 2018 WL 2041995, at *8 (N.D. Cal. Apr. 30, 2018) (dismissing claims *sua sponte* without leave to amend); *Barnett v. Becerra*, 2018 WL 1070820, at *7 (N.D. Cal. Feb. 26, 2018) (dismissing claims *sua sponte* without leave to amend); *Theill v. Oregon*, Case No. 17-1722-SB, Findings and Recommendation ECF No. 7 (D. Or. January 2, 2018) (recommending dismissal of claims *sua sponte* with leave to amend); *James v. Massachusetts*, 2018 WL 326457, at *3-4 (D. Mass. Jan. 8, 2018) (identifying deficiencies in the complaint and ordering the plaintiff to show cause why the case should not be dismissed), *complaint dismissed in* 2018 WL 1156228 (D. Mass. Mar. 5, 2018).

accommodations by the defendant because of his disability." *Arizona ex rel. Goddard v. Harkins Amusement Enters., Inc.*, 603 F.3d 666, 670 (9th Cir. 2010). An attorney's office and social service center are considered places of public accommodation. 42 U.S.C. § 12181(7)(F), (K).

A *prima facie* claim under Section 504 of the Rehabilitation Act requires a plaintiff to allege the following four elements: (1) that she is disabled under the Act; (2) that she is "otherwise qualified" for the benefit or services sought, meaning that she could "meet the essential eligibility requirements of such services, with or without reasonable accommodation"; (3) that she was denied the services because of her disability; and (4) that the program or activity in question receives federal financial assistance. *Martin v. California Dep't of Veterans Affairs*, 560 F.3d 1042, 1047 (9th Cir. 2009).

1. **State of Washington**

Title III of the ADA does not apply to governmental entities and thus Plaintiffs fail to state a claim for their Title III claim against the state of Washington. Regarding Plaintiffs' Title II and Rehabilitation Act claims, the only facts asserted against the State are conclusory and not accepted by the Court as true. For example, Plaintiffs allege that the State has a policy of discriminating against women and children and in favor of fathers for financial gain, and has a policy of making up mental health accusations such as bipolar and PTSD to ensure women do not get custody of children. Plaintiffs do not, however, allege any facts to support these conclusions. Plaintiffs also allege legal conclusions, such as that the State did not provide Ms. Sanchez a full and equal opportunity to benefit from the State's services. To state a claim for relief, Plaintiffs must allege "sufficient factual matter to state a facially plausible claim to relief." *Shroyer*, 622 F.3d at 1041. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plaintiffs' allegations relating to the state of

Washington are insufficient to meet this test. Accordingly, they fail to state a claim against the State relating to their ADA Title II claim or Rehabilitation Act claim.

2. **Alex Styve**

Alex Styve is an attorney who represented Plaintiffs' ex-husband during the domestic dispute. Plaintiffs allege Mx. Styve is both a public and private entity under the ADA. Plaintiffs fail to allege facts demonstrating that Ms. Styve is an instrumentality of the state and thus Plaintiffs' Title II claim under the ADA against Ms. Styve is dismissed.

Plaintiffs only other allegation relating to Ms. Styve is that she received federal funds. Plaintiffs do not allege, however, that Ms. Styve denied Plaintiffs the public accommodation of Ms. Styve's law office on the basis of Plaintiffs' perceived or actual disability. Accordingly, Plaintiffs' claim under Title III of the ADA is dismissed. Similarly, Plaintiffs do not allege that they sought any services from Ms. Styve that Plaintiffs were precluded from obtaining by Ms. Styve because of Plaintiffs' disabilities. Thus, their Rehabilitation Act claim is dismissed.

3. **Cowlitz Defendants**

Plaintiffs allege that the Cowlitz Defendants are private entities, thus Plaintiffs' claims under Title II of the ADA is dismissed against all the Cowlitz Defendants. The only other allegation specifically relating to the Cowlitz Defendants is that they receive federal funding. This does not support that, because of Plaintiffs' disability, the Cowlitz Defendants denied Plaintiffs a public accommodation that the Cowlitz Defendants rent, own, or lease. Thus Plaintiffs fail to state a Title III claim against these defendants. Plaintiffs similarly fail to state a Rehabilitation Act claim against these defendants, because Plaintiffs do not allege that they sought services from the Cowlitz Defendants or were denied services by the Cowlitz Defendants because of Plaintiffs' disabilities.

## CONCLUSION

Defendants' motions for judgment on the pleadings (ECF 94, 96, 101) are GRANTED. Judgment is granted in favor of the moving parties. The Court also *sua sponte* dismisses all claims against all nonmoving Defendants, without leave to amend.

**IT IS SO ORDERED**.

DATED this 18th day of October, 2018.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge
